# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEE MAX BARNETT, | No. CIV S-99-2416-JAM-CMK |
| Petitioner, | DEATH PENALTY CASE |
| vs. | <u>FINDINGS AND RECOMMENDATIONS</u> |
| ROBERT L. AYERS, | |
| Respondent. | |

_____/

  Petitioner, a state prisoner proceeding with appointed counsel, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court is respondent's motion to dismiss (Doc. 222), filed on May 23, 2007.  Petitioner filed an opposition (Doc. 227) on July 20, 2007.  Respondent's reply (Doc. 232) was filed on August 23, 2007.  A hearing was held before the undersigned on November 7, 2007.  Counsel for both petitioner and respondent appeared telephonically at the hearing.

## I.  BACKGROUND

  This case proceeds on petitioner's third amended petition ("TAP") (Doc. 183), filed May 10, 2006, challenging his 1988 conviction and death sentence.  Respondent brings this motion to dismiss the third amended petition as a mixed petition containing both unexhausted and exhausted claims.  Respondent identifies 18 claims as unexhausted[1], and alleges these claims

---

[1]  Respondent originally identified 22 such claims.  However, he has acknowledged that three of the claims (19, 27 and 96) are exhausted in his reply brief, and at the hearing he acknowledged that claim 26 was exhausted.  In addition, he has acknowledged several of the sub-claims are exhausted.

are either entirely new claims, contain new factual allegations, or incorporate an intervening

change in federal law.  Petitioner responds that each of the claims identified are either exhausted

or that any attempt at exhaustion would be futile.  As to the claims petitioner alleges are

exhausted, he states they have been raised in the state court either through his informal reply brief

in support of his second state habeas petition or in his pro se petition filed with the California

Supreme Court.

## II.  STANDARDS

Under 28 U.S.C. § 2254(b), the exhaustion of available state remedies is required

before the federal court can grant a claim presented in a habeas corpus case.  See Rose v. Lundy,

455 U.S. 509 (1982); see also Kelly v. Small, 315 F.3d 1063, 1066 (9th Cir. 2003); Hunt v.

Pliler, 336 F.3d 839 (9th Cir. 2003).  "A petitioner may satisfy the exhaustion requirement in

two ways:  (1) by providing the highest state court with an opportunity to rule on the merits of the

claim . . .; or (2) by showing that at the time the petitioner filed the habeas petition in federal

court no state remedies are available to the petitioner and the petitioner has not deliberately

by-passed the state remedies."  Batchelor v. Cupp , 693 F.2d 859, 862 (9th Cir. 1982) (citations

omitted).  The exhaustion doctrine is based on a policy of federal and state comity, designed to

give state courts the initial opportunity to correct alleged constitutional deprivations.  See Picard

v. Connor, 404 U.S. 270, 275 (1971); see also Rose, 455 U.S. at 518.

Regardless of whether the claim was raised on direct appeal or in a post-

conviction proceeding, the exhaustion doctrine requires that each claim be fairly presented to the

state's highest court.  See Castille v. Peoples, 489 U.S. 346 (1989).  Although the exhaustion

doctrine requires only the presentation of each federal claim to the highest state court, the claims

must be presented in a posture that is acceptable under state procedural rules.  See Sweet v.

Cupp, 640 F.2d 233 (9th Cir. 1981).  Thus, an appeal or petition for post-conviction relief that is

denied by the state courts on procedural grounds, where other state remedies are still available,

does not exhaust the petitioner's state remedies.  See Pitchess v. Davis, 421 U.S. 482, 488

1   (1979); Sweet, 640 F.2d at 237-89.[2]

2          In addition to presenting the claim to the state court in a procedurally acceptable

3   manner, exhaustion requires that the petitioner make the federal basis of the claim explicit to the

4   state court by including reference to a specific federal constitutional guarantee.  See Gray v.

5   Netherland, 518 U.S. 152, 162-63 (1996); see also Shumway v. Payne, 223 F.3d 982, 998 (9th

6   Cir. 2000).  It is not sufficient for the petitioner to argue that the federal nature of the claim is

7   self-evident.  See Lyons v. Crawford, 232 F.3d 666, 668 (9th Cir. 2000), amended by 247 F.3d

8   904 (9th Cir. 2001).

9                              **III.  PRELIMINARY DISCUSSION**

10      **A.      Futility**

11         Petitioner alleges that it would be futile to require him to return to state court to

12  exhaust some of his new claims.  Petitioner argues that these "new" claims center around newly

13  discovered facts that petitioner was only able to discover through a new post-conviction

14  discovery process that was not previously available (See Cal. Penal Code § 1054.9, which

15  became effective January 1, 2003).  Through this post-conviction discovery, petitioner was able

16  to discover material that the prosecution should have disclosed at the time of trial but failed to do

17  so.  He argues that the state courts are responsible for the lack of discovery and therefore for the

18  lack of exhaustion because case precedent prior to § 1054.9 did not allow discovery before an

19  order to show cause was issued, which did not happen in petitioner's cases.  Therefore, because

20  the state court bears responsibility for petitioner's failure to exhaust, he concludes exhaustion

21  should be waived.  In addition, the delay for exhaustion would be unacceptable in this case.  He

22  also asserts that the state court has already rejected the same or similar claims in petitioner's

23  previous state petitions.  He claims fairness requires this court to excuse exhaustion, finding

24
        [2]     This situation of procedural deficiency is distinguishable from a case presented to
25  the state court using proper procedures but where relief on the merits is precluded for some
    procedural reason, such as untimeliness or failure to raise the claim on direct appeal.  The former
26  represents an exhaustion problem; the latter represents a procedural default problem.

circumstances exist that render the state court process ineffective to protect petitioner's rights.

Respondent argues that the futility doctrine has been rejected (but not overruled) and is only available in limited circumstances such as where it is purely a question of law. He alleges that this is not the case here because petitioner's unexhausted claims are based on new factual allegations not questions of law.

The futility doctrine was advanced in Sweet v. Cupp, 640 F.2d 233, 236 (9th Cir. 1981) (citing, Fay v. Noia, 372 U.S. 391 (1963)), where the Ninth Circuit stated "[t]he exhaustion requirement is a matter of comity, not of jurisdiction. Its purpose is to afford the state courts, which have an equal responsibility with the federal courts to vindicate federal constitutional rights, the first opportunity to remedy a constitutional violation." The court goes on to state that "[a] number of circuits have held that a petitioner may be excused from exhausting state remedies if the highest state court has recently addressed the issue raised in the petition and resolved it adversely to the petitioner, in the absence of intervening United States Supreme Court decisions on point or any other indication that the state court intends to depart from its prior decisions." Id. (citations omitted). "We adopt the futility doctrine because it promotes comity by requiring exhaustion where resort to state courts would serve a useful function but excusing compliance where the doctrine would only create an unnecessary impediment to the prompt determination of individuals' rights. However, we find the futility doctrine inapplicable to the petition before us." Id. (concluding that the standard of review was changed by the Supreme Court and the state court had not had an opportunity to consider the questionable statute under the new standard for review).

The Sweet futility doctrine was criticized by the Supreme Court in Engle v. Isaac, 456 U.S. 107 (1982). There the Court stated

> If the defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim. Even a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid.

4

1     Id. at 130.

2    The Ninth Circuit has also questioned the futility doctrine. "Although we have

3 not explicitly overruled Sweet, we have rejected the 'futility doctrine' in at least one post-Engle

4 decision." Noltie v. Peterson, 9 F.3d 802, 805 (9th Cir. 1993) (citing Roberts v. Arave, 847 F.2d

5 528, 530 (9th Cir. 1988)). "The exhaustion requirement is excused only in those 'rare cases

6 where exceptional circumstances of peculiar urgency' mandate federal court interference."

7 Deters v. Collins, 985 F.2d 789, 795 (5th Cir. 1993) (quoting Ex Parte Hawk, 321 U.S. 114, 118

8 (1944)).

9    As the respondent points out, the futility doctrine is most applicable when the

10 issue is purely legal. See Noltie, 9 F.3d at 806. However, when the issue is factual, the doctrine

11 is not available. In this case, petitioner asserts that exhaustion should be excused as to some

12 claims based on the futility doctrine. Because these claims are factual and not purely legal, the

13 futility doctrine should not apply.

14   **B.**  **Pro Se Petition**

15    Petitioner argues that several of the claims at issue here were exhausted in the

16 state courts because he presented them in pro se petitions filed with the California Supreme

17 Court. Respondent argues that these claims could not be located in the voluminous filings with

18 the state court and that, even as to those claims that could be located, the claims raised in his

19 third amended petition include additional facts that substantially alter the claim rendering them

20 unexhausted. Petitioner has filed a notice to assist the parties and the court with the location of

21 those claims he alleges were exhausted in his pro se petition.

22    This issue of whether the claims raised in petitioner's pro se state petition were

23 sufficient to exhaust the claims raised in this court's proceeding has previously been decided.

24 This court has found that, assuming petitioner raised the same claims in his pro se state court

25 filings and the instant federal petition, the pro se filings were sufficient to exhaust the claims.

26 (See Docs. 117, 118). The court finds no reason to deviate from the prior ruling.

C.     **Informal Reply**

Petitioner argues that several of his claims were exhausted in the state courts by including them in his informal reply.  Respondent argues that the informal briefing process is only used to assist the state court in determining whether the habeas corpus petition lacks merit and may be rejected summarily.  However, a petitioner may not use the informal reply to amend the petition, just like a traverse cannot be used to add additional claims or amend the petition.

California courts allow new claims to be raised in informal reply procedures.  See In re Gay, 19 Cal.4th 771 (1998), In re Soderstein, 146 Cal.App.4th 1163 (5th Dist. 2007).  This is especially true where petitioner incorporates by reference the claims raised in his informal reply.  See Gay, 19 Cal.4th at 781 n.7; Soderstein, 146 Cal.App.4th at 1173 n.6.  In fact, the California courts will even allow new issues raised for the first time in a petition for rehearing, especially in a capital case.  See People v. Malone, 205 Cal. 29, 32-33 (1928).

In reviewing a petition, the state courts have the ability to request informal briefing from the parties prior to requiring a formal response from the government to help the court determine whether the petitioner has stated a prima facie case.  Use of the informal response procedure has two purposes.  First it helps the petitioner who is an inartful pleader in using the government to help flush out the facts to support his case.  Second, informal briefing may provide the court with irrefutable evidence that the allegations are factually unfounded. Informal briefing occurs prior to the filing of a formal return and traverse.  Raising a claim in the informal briefing stage is in contrast to the use of the traverse to raise new claims, which is not allowed by the state courts.  See In re Clark, 5 Cal.4th 750, 781 n.16 (1993).

Respondent attempts to analogize a traverse with an informal reply.  They are not analogous.  The biggest difference between an informal reply and a traverse is the timing of the filing and the ability of the opposing party to respond.  When an informal response and reply are ordered by the state court, both parties have the ability to respond to the claims and arguments raised in either.  The petitioner has the ability to respond to an informal response in both his

informal reply and his traverse.  A respondent has the ability to respond to an informal reply in his return.  See e.g. People v. Romero, 8 Cal.4th 728 (1994).  Therefore, a respondent has the ability to contradict any claim raised in an informal reply, unlike a traverse which is generally the last pleading submitted before the case is submitted to the court for a decision.

The undersigned finds that the California Supreme Court had before it petitioner's informal reply and all claims raised therein, to which the respondent had the ability to respond. Accordingly, any claim raised in the current petition which was raised in petitioner's informal reply brief in the state court will be found to be exhausted.

### IV.  ANALYSIS

Respondent argues the following claims in petitioner's third amended petition are unexhausted or contain unexhausted sub-claims or allegations:  claims 1, 2, 13, 34, 35, 49, 54, 55, 58, 65, 92, 102, 103, 104, 111, 114, 117, and 118.  Petitioner argues claims 1, 2, 34, 35, 55, 58, 102, 104, and 114 were raised in petitioner's informal reply to his second state habeas petition.  He argues claims 2, 49, 65, and 102 were raised in his pro se petition filed in the California Supreme Court.  Petitioner concedes that claims 13, 54, 103, 117, and 118 are unexhausted, relying on his argument that any requirement to exhaust in state court would be futile.

**Claim 1**:      Denial of effective assistance of counsel by complete breakdown of attorney-client relationship.

Respondent argues that this claim, which involves allegations regarding what Charles Andres would have testified to and allegations regarding the District Attorney investigator's interview of Fred Dixon, is unexhausted.  Petitioner claims he raised both of these factual issues in his informal reply brief.  Respondent maintains that raising these issues in the informal reply brief was insufficient to exhaust these allegations.  In addition, respondent argues that the allegations raised in petitioner's state habeas petition involved different factual

1  circumstances, specifically those regarding false statements as to the reasons counsel failed to

2  call witnesses other than Andres or Dixon.  However, respondent does not controvert petitioner's

3  claim that he raised this issue in his informal reply brief.  He simply relies on the argument that

4  including a claim in the informal reply brief fails to exhaust any claim.  As discussed above, the

5  undersigned finds raising a claim in the informal reply brief is sufficient to exhaust.  Therefore,

6  the undersigned finds that claim 1 is exhausted.

7        **Claim 2**:     Each attorney who represented Mr. Barnett in the trial court had conflicts
   of interest because of his representation of other persons involved in the
8                          case, requiring that the judgment be set aside; counsel represented Mr.
   Barnett ineffectively in failing to bring these conflicts to the attention of
9                          the court in a timely and appropriate manner.

10        Respondent claims that allegations regarding trial counsel's former representation

11  of Dave McGee and allegations regarding ". . .counsel's failure to produce evidence that

12  Cantwell had meth oil that Barnett took" were not properly raised in the state court.  (See Motion

13  to Dismiss at 5).  Petitioner argues that these factual allegations were raised in both his informal

14  reply brief and his pro se state court petition.

15        As to petitioner's allegations regarding the representation of McGee, the relevant

16  portion of this claim is as follows:

17          Mr. Mueller, and by association, Mr. Schroder and Mr. Stapleton,
   had another conflict of interest.  Mr. Mueller represented State witness
18  Dave McGee for a 1977 offense of Vehicle Code § 23101(a), driving
   under the influence with injury, a felony.  Exh. 216 (discovery page 3575).
19  Because of Mueller's continuing duty of loyalty to McGee, he and
   Schroder were prevented from eliciting testimony from Mr. Barnett or
20  presenting evidence that would have implicated McGee in wrong-doing,
   such as his brandishing a rifle at Mr. Barnett in the confrontation at
21  McGee's house in 1985, when McGee was already a convicted felon.  The
   adverse effect of this conflict was that Mr. Kenkel, because of his
22  association with Mr. Stapleton, failed to impeach Dave McGee with one
   felony conviction that the prosecution did disclose - - the 1977 driving
23  under the influence with injury conviction for which Mr. Mueller
   represented McGee.

24        TAP at  39 (footnote omitted).

25
26  Petitioner claims this allegation was also included in his pro se petition, directing the court to

page 13, paragraph 26 of his declaration attached to volume IX of the petition.  Paragraph 26 states:

> MORE DAVID McGEE IMPEACHMENT: Fact Douglas Nisson, ex-policeman, my PI, told me he was present when McGee stated how much he despised the law, and had no respect for the law – as he climbed up on a squad car and defecated on the car.  This demonstrates the contempt which McGee, as an outlaw biker and dope fiend, held for the justice system.  The jury would have understood that his work "to tell the truth;" therefore, should be viewed with skepticism.  <u>McGee likely was represented by the PD.</u>  Counsel was so conflicted he refused to use even this.  McGee lied about almost everything, except that I did leave a note on Eggett's Jeep seat the day I left in 1985, telling Eggett that our partnership was over.  (That impeached State witnesses Racowski and McGee; both falsely testified it was Eggett who terminated the partnership because I was violent.  Then the DA asserted he could bring in over 50 alleged violent acts, including attempts to murder others – all lies – which allegedly led to Eggett terminating.  Counsel was so conflicted that he objected to McGee's exculpatory testimony about the note I left (TR 9212:28-9214:25.), which established I terminated the partnership, impeaching McGee and Racowski, and which would have caused the more than 50 other crimes to be excluded and stricken, if proven I terminated the partnership; because then the perjurious [sic] alleged violence evidence has no admissibility.  Due to conflicts Counsel was intentionally IAC by objecting to the note testimony and note, and in not moving to admit the note as evidence, arguing the note evidence, and not moving to strike the more than 50 other crimes evidence, and for mistrial.

(Petitioner's pro se petition, Vol. IX, at p. 13, ¶ 26 (emphasis added)).

Respondent contends that the claim is unexhausted because, as presented in the pro se petition, it was a speculative claim that a conflict of interest existed.  He argues that a speculative claim is not the same "as a conflict of interest claim that is supported by evidence that the public defender did represent a witness."  (<u>See</u> Reply at 7).  Petitioner maintains that this sub-claim is exhausted but asserts that, if it is not, it should be deemed exhausted because it would be futile to require him to return to the state court at this point.

Petitioner included the claim that McGee was represented, or at least he believed McGee had been represented, by the public defender in his pro se petition as noted above.  That he is now claiming for sure that McGee had been represented by the public defender, and the

1   nature of that representation, does not substantially alter his claim.  This claim was raised before

2   the state court, and the undersigned finds it is exhausted.

3          As to petitioner's allegations regarding counsel's failure to produce evidence that

4   Cantwell had meth oil that Barnett took, the court agrees with petitioner that respondent does not

5   pinpoint exactly where the allegation he takes issue with is located in the petition.  Petitioner

6   assumes respondent was referring to paragraph 194 which states:

7              Mr. Kenkel also owed a duty of loyalty to Mr. Barnett.  That duty
             of loyalty required that Mr. Kenkel take actions that were in Mr. Barnett's
8              interests without regard to the interest of a third party.  Notwithstanding
             his duty of loyalty to Mr. Barnett, defense counsel failed to investigate Mr.
9              Barnett's allegations regarding Jimmy Skidmore.  Skidmore had critical
             evidence in his possession; he had some of the meth oil that Mr. Barnett
10             testified he had stolen from Cantwell.  Production of some of the meth oil
             before the jury was critical to Mr. Barnett's defense.  The prosecutor
11             argues in closing that Mr. Barnett was lying about the meth oil, that Mr.
             Barnett had never stolen meth oil from Cantwell.  RT 11661, 11667-69.
12             The existence of the meth oil was a disputed fact, a fact essential to
             establishing Mr. Barnett's defense.  It was incumbent upon defense
13             counsel to produce any available evidence to corroborate Mr. Barnett's
             testimony regarding the meth oil.

14
           TAP at 45-46.
15

16   A review of the third amended petition reflects other references included in claim 2  relating to

17   meth oil.  See TAP at 40, 48-49, 60, 63, and 64-65.  Respondent does not refute petitioner's

18   reference, so the court will also assume this is the paragraph to which respondent is referring.

19          Petitioner argues these factual allegations are found in petitioner's informal reply

20   as well as the pro se petition.  Respondent maintains that this claim is unexhausted even if raised

21   in the informal reply, but again does not controvert petitioner's assertion that they were included

22   in the informal reply.  As discussed above, the undersigned finds the claims raised in the

23   informal reply are exhausted, and therefore finds this claim is exhausted.

24      **Claim 13**:      The prosecution violated its due process obligation to Mr. Barnett by
                      failing to disclose material impeachment information concerning
25                      numerous prosecution witnesses, and Mr. Barnett's trial counsel
                      represented him ineffectively by failing to appropriately impeach these
26                      witnesses.  Trial counsel failed to object to irrelevant prejudicial testimony

10

1    by state witnesses, in violation of Mr. Barnett's right to effective
2    assistance of counsel.

3        The sub-claims at issue relate to factual allegations regarding Turowski and

4    Hammons, which respondent identifies are on pages 269-270 of the third amended petition, as

5    follows:

6            Wilhelm Turowski testified against Mr. Barnett in the penalty
     phase, regarding an alleged incident in which Mr. Barnett supposedly
7    robbed a gas station where Turowski was the attendant in 1972. 2d Am.
     Petn. at 368-36 (Doc. 157). In Claim 35, *infra*, Mr. Barnett pleads that
8    there was evidence in the police reports of the incident indicating that the
     "robbery" was a set-up orchestrated by Turowski, who stood to benefit
9    from the proceedings. What Mr. Barnett did not know at the time of trial
     was that Turowski had a criminal record that Mr. Barnett could have used
10   to impeach his testimony. Exh. 233.

11           Turowski was convicted of larceny – a crime of dishonesty and or
     moral turpitude – in Arizona in 1960. Mr. Kenkel could have impeached
12   Turowski with evidence of this crime of moral turpitude, [had] the State
     not suppressed the information. The State failed to disclose this
13   information to trial counsel despite the trial court's discovery order
     compelling the State to disclose "the criminal record of all witnesses who
14   may be called to testify at the trial of this case." CT 472

15           Turowski was also convicted of possession of marijuana in 1976.
     Exh. 233 (discovery pages 3245-46). While the marijuana possession
16   conviction itself was not for a crime of moral turpitude, such a conviction
     would have put the defense on notice that they needed to investigate
17   Turowski's drug use to determine if he was a drug addict, and whether
     they were entitled to the special addict jury instruction, that advises the
18   jury to view an addict's testimony with suspicion. *See People of the
     Territory of Guam v. Dela Rosa*, 644 F.2d 1257, 1261 (9th Cir. 1980);
19   *United States v. Kinnard*, 465 F.2d 566 (D.C. Cir. 1972). The
     prosecution's suppression of Turowski's criminal record violated *Brady v.
20   Maryland* and deprived the defense of the ability to impeach the only
     witness the State proffered regarding the alleged robbery in Arizona.
21
             John Hammons testified for the State in rebuttal. Hammons
22   disputed Mr. Barnett's testimony that Billy Cantwell had
     methamphetamine stored in a van on his parents' property. RT 11416-18.
23   Defense counsel did not cross-examine Mr. Hammons. RT 11418.

24           Defense counsel did not know that Hammons had a criminal
     record. Hammons was convicted of violating Penal Code § 449(a) – burn
25   personal property on September 6, 1979, in Butte County. Exh. 234.
     Hammons's rap sheet labels this conviction a "potential felony strike." *Id.*
26   Therefore, counsel could have impeached Hammons with his prior felony

                                    11

conviction and because the offense was a crime of moral turpitude. *People v. Miles*, 172 Cal. App. 3d at 481-482.

Despite the trial court's discovery order that compelled the prosecution to disclose the criminal record of all witnesses, CT 472, the State did not disclose Hammons's criminal record to trial counsel. This suppression of impeachment material violated *Brady v. Maryland* and made it impossible for the defense to impeach Hammons.

TAP at 269-70.

Petitioner concedes he has not presented these factual allegations to the state court because they were unknown until disclosed to federal habeas counsel pursuant to § 1054.9. However, he asserts exhaustion would be futile because the state court has already rejected similar allegations regarding 11 other witness. Petitioner argues there is no reason to believe the state court would look more favorably on these claims than those already presented, especially because Brady violations are judged cumulatively with other Brady violations. As the state court found no reason to grant his petition based on the other 11 claims, petitioner concluded that there is no reason to expect a different result with respect to Turowski and Hammons. He contends there is no likelihood that the state court would grant him a hearing on the merits. He also argues that it was the state process that caused the lack of discovery of these allegations, and therefore any need to exhaust them further should be excused.

As respondent points out, the cases in which exhaustion is excused for Brady violation claims arise in the context of procedural default issues. As such, the undersigned does not find that exhaustion should be excused for these new claims. Moreover, the new allegations are factual in nature, arising from information that could have been used to impeach Turowski and Hammons. Whether the state courts would look differently upon these allegations given the facts surrounding them is not for this court to say. The state court should have the opportunity to decide the question. The undersigned finds that those portions of claim 13 relating to Turowski and Hammons, including claims of ineffective assistance of counsel regarding investigation of these witnesses, are unexhausted and not subject to the futility doctrine.

1       **Claim 34**:     Mr. Barnett's trial counsel was ineffective by failing to argue evidence
2                              indicating that Mr. Barnett was afraid of Billy Cantwell, and allowing the
                              prosecutor to argue that he was not actually afraid.

3           At issue are the allegations based on information from Jeff Barker, which

4 respondent states are on page 366 of the third amended petition. Petitioner argues the allegations

5 regarding Jeff Barker are not based on new discovery, that they were included in his second

6 amended federal petition, and that they are exhausted by way of his informal state court reply

7 brief. Respondent again does not refute that the allegations were raised in petitioner's informal

8 reply brief, but instead relies on his argument that the informal reply brief is insufficient to

9 exhaust. For the reasons discussed above, the undersigned finds this claim is exhausted.

10      **Claim 35**:     The jury did not learn of significant evidence mitigating and impeaching
                              the prosecution's evidence of prior criminal activity by Mr. Barnett, due to
11                            ineffective assistance of counsel, denial of a continuance of trial, and
                            violations of the prosecution's duty of timely disclosure.
12

13           At issue are the allegations regarding the failure to investigate and impeach, the

14 allegations regarding the failure to elicit jury information, and the allegations based on the

15 declaration of Bruce Knights. Respondent identifies the sub-claims as paragraphs 1288-93,

16 1295-1300, and 1384-87, respectively. Petitioner asserts these allegations were presented in his

17 informal reply brief. Respondent again argues the informal reply brief is insufficient to exhaust,

18 but does not dispute the allegations were raised therein. For the reasons discussed above, the

19 undersigned finds these sub-claims are exhausted.

20      **Claim 49**:     Counsel rendered ineffective assistance by failing to investigate and
                            present favorable mitigating evidence.
21

22           At issue are the allegations based on the declarations of Tina Miller (aka Christina

23 Hyde) and Casey Campbell. Petitioner contends the allegations regarding Tina Miller were

24 raised in both his pro se petition and his informal reply to the second state petition. He also

25 contends the allegations regarding Casey Campbell were raised in his informal reply.

26 Respondent again relies on his assertion that claims raised in the informal reply are not

1   exhausted, but does not dispute the allegations were raised in the informal reply.  In addition,

2   respondent claims he could not locate the allegations regarding Tina Miller in the pro se petition.

3   Petitioner points to page 7 of his declaration contained in volume one of his pro se petition for

4   the allegations regarding Tina Miller.  As discussed above, allegations raised in the informal

5   reply brief are exhausted.  Because respondent does not contend these allegations were not raised

6   in the informal reply brief, the undersigned finds these claims are exhausted.

7   **Claim 54**:   The prosecutor violated Mr. Barnett's right to due process by failing to
             investigate information that came to his attention, that was inconsistent
8            with his theory of the case and suggested that Mr. Barnett had been
             framed; defense counsel represented Mr. Barnett ineffectively by failing to
9            investigate the same information.

10          At issue are the allegations based on new information regarding an anonymous

11  letter. Specifically, petitioner's allegation is:

12          The prosecution received an anonymous letter on September 8,
        1988, after the guilty verdicts but before the November 30, 1988,
13      sentencing, which said that Mr. Barnett was innocent. Exh. 235. The
        prosecution did nothing to investigate the letter. Exh. 237 at 10 (#40) ("No
14      investigation conducted relative to the anonymous letter, no investigative
        lead available to follow"). The prosecution's non-response to the
15      anonymous letter is unconscionable. The prosecution had the original
        letter, which was handwritten, knew that it had been post-marked in
16      Marysville, California, on September 7, 1988, and knew that the writer
        knew or knew of Bill Cantwell and Lee Barnett. One assumes that if the
17      letter had implicated Mr. Barnett, the State would have lifted a finger to
        investigate its source. Because the letter was exonerating, the State did
18      nothing to investigate its contents.

19          TAP at 439 (footnote omitted).

20          Petitioner concedes he has not presented this allegation to the state court because

21  it was unknown until disclosed to federal habeas counsel pursuant to § 1054.9.  However, he

22  claims any exhaustion requirement of this issue would be futile because the state court has

23  already rejected a similar claim alleging the prosecutor ignored evidence that was inconsistent

24  with his guilt.  He claims there is no likelihood that the state court would grant him a hearing on

25  the merits of this claim.  Respondent argues this is a factual issue, not one involving a question

26  of pure law, to which the futility doctrine, even if available, does not apply.  The undersigned

1  agrees that the allegation in claim 54 regarding the anonymous letter, including a claim of

2  ineffective assistance of counsel based on failure to investigate, is factually based and, therefore,

3  exhaustion is not excused based on futility.

4     **Claim 55**:     The prosecution violated Mr. Barnett's constitutional rights by failing to
                        disclose relevant records of the Butte Interagency Narcotics Task Force.

5

6          At issue are the allegations regarding the prosecution's failure to disclose records

7  from the Butte Interagency Narcotics Task Force concerning persons other than petitioner.

8  Petitioner contends he raise these issues in his second state petition, his informal reply, and his

9  pro se petition.  Respondent does not contest this, again relying on his position that the informal

10 reply is insufficient to exhaust claims.  He does not address petitioner's contention that the

11 allegations were also raised in his state petition and his pro se petition.  Accordingly, the

12 undersigned finds this claim is exhausted.

13

14    **Claim 58**:     The prosecutor committed misconduct by arguing that a defense witness's
                        religious beliefs reflected adversely on the witness's credibility.

15         At issue here is the allegation of ineffective assistance of counsel.  Again

16 petitioner alleges he raised this specific issue in his informal reply brief and his pro se petition,

17 and respondent relies on his contention that the informal reply brief is insufficient to exhaust.

18 Respondent also states he was unable to locate this claim in petitioner's pro se petition.

19 Accordingly, the undersigned finds this claim is exhausted.

20    **Claim 65**:     The California death penalty statute under which Mr. Barnett was
                        sentenced was unconstitutional, as was the jury instruction on the "torture"

21                      special circumstance.

22         At issue here are the allegations regarding defense counsel's failure to object to

23 the constitutionality of the statute and the vague jury instruction regarding torture, as well as an

24 allegation of ineffective assistance of appellate counsel.  Petitioner contends these issues were all

25 raised in his informal reply brief.  In addition, he claims the allegations regarding ineffective

26 assistance of counsel were raised in his pro se petition, which he claims was all about ineffective

15

1   assistance of appellate counsel.  He also asserts that he raised several claims regarding the

2   vagueness of the jury instruction regarding the torture murder special circumstances in his pro se

3   petition.  Respondent maintains his position that, even if raised in the informal reply brief (which

4   he does not dispute), these claims remain unexhausted.  In addition, respondent asserts he could

5   not determine if the claims were included in the pro se petition.

6            The undersigned has found the informal reply brief sufficient to exhaust claims

7   and, therefore, claim 65 is exhausted, regardless of whether the allegations at issue were also

8   raised in petitioner's pro se petition.

9

10         **Claim 92**:          Mr. Barnett was denied due process, a fair trial and reliable determinations
                                of guilt and sentencing because no substantial evidence supported the
11                              findings of special circumstances based upon kidnaping and robbery, or
                                the conviction of kidnaping of Billy Eggett.
12

13           At issue here is the incorporation of the Ninth Circuit's decision in <u>Clark v.</u>

14   <u>Brown</u>, 442 F.3d 708 (9th Cir. 2006).  Petitioner asserts this claim was raised in his second state

15   habeas petition, as claim 85B.  However, the part of claim 92 addressing the sufficiency of the

16   evidence of the kidnapping special circumstance is phrased in light of the Ninth Circuit's recent

17   decision in <u>Clark</u>, which addressed the elements of the California felony-murder special

18   circumstance.  In <u>Clark</u>, the Ninth Circuit discussed the California Supreme Court's 1990

19   decision in <u>People v. Clark</u>, 50 Cal.3d 583 (1990), arising from the same death penalty

20   conviction.  In <u>People v. Clark</u>, the California Supreme Court discussed the elements of the

21   felony-murder special circumstance, significantly changing the analytical framework and

22   applying a new rule retroactively.  The Ninth Circuit held in <u>Clark v. Brown</u> that the retroactive

23   application of the new rule violated the petitioner's due process right to fair notice that his

24   conduct would make him death eligible.  <u>See</u> 422 F.3d at 708.  In claim 92, petitioner concludes

25   that the change in California law relating to the elements of the felony-murder special

26   circumstance also applies to the kidnapping special circumstance and that, due to this change, the

16

1    evidence was insufficient to establish the latter.   In making this argument, petitioner necessarily

2    asserts that the new California Supreme Court rule announced in People v. Clark applies

3    retroactively in his case.[3]

4            Respondent argues that this portion of claim 92 is unexhausted because the Ninth

5    Circuit's decision "casts the legal issue in a fundamentally different light."  In particular,

6    respondent points to the retroactivity argument included in claim 92 that was not previously

7    raised in his state petition.  Petitioner argues that "[c]itation in the state court of the same cases

8    cited in the federal court is not required in order to exhaust a claim."  (See Petitioner's

9    Opposition at 50).

10           The discussion in claim 92 concerning Clark is as follows:

11           Subsequent to the offense at issue here, the California Supreme
        Court in *People v. Clark*, 50 Cal.3d 583, 608-09 (1990), significantly
12      changed the first requirement of *Green* and entirely dispensed with the
        second. The Court changed the first requirement by expanding the
13      definition of an "independent" purpose to include a concurrent purpose
        that was not – in any ordinary sense of the term, and, more important, in
14      the sense used in *Green* – a purpose "independent" of the murder.  The
        court dispensed entirely with the second requirement that the murder have
15      the purpose of advancing the "independent felonious purpose" of the
        arson.  *Clark v. Brown*, 442 F.3d 708, 720 (9th Cir. 2006).

16
        In finding the evidence sufficient to support the kidnaping special
17      circumstance against Mr. Barnett, the California Supreme Court tested the
        evidence against the broader interpretation of the felony murder special
18      circumstances which it had articulated for the first time in *Clark*. The court
        said that "concurrent intent to kill and to commit an independent felony
19      will support a felony-murder special circumstance." 17 Cal.4th at 1158.
        This proposition was cited to *People v. Raley*, 2 Cal.4th 870, 903 (1992).
20      *Raley* relied on *Clark* and, like *Clark*, was decided after the offense with
        which Mr. Barnett was charged.

21
        By the reasoning applied by the California Supreme Court in Mr.
22      Barnett's case, *any* evidence of an independent felonious purpose (here, an
        intent to kidnap) suffices to sustain the special circumstance, however
23      weak that evidence in comparison with the evidence that the kidnaping

24   _____

25        [3]      In Clark v. Brown, the petitioner argued, and the Ninth Circuit agreed, that
     retroactive application of the new rule announced in People v. Clark was unfair.  It appears that
     petitioner is arguing that People v. Clark should not only be applied retroactively, but should be
26   extended to the kidnapping special circumstance.

17

was incidental to the killing. That was not the test at the time of the offense. At that time, if the "primary goal" of the accused was to kill rather than to kidnap, then the special circumstance finding could not stand. *Weidert, supra,* 39 Cal.3d at 842. After the fact, the state court's decision in Mr. Barnett's case had the effect of changing the word "primary" to "only."

TAP at 578-79 (footnotes omitted).

Petitioner's claim 85B in his second state habeas petition is as follows:

> Mr. Barnett's conviction and death sentence were unlawfully and unconstitutionally obtained in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution because the finding of special circumstances of kidnapping, without substantial evidence, deprived Mr. Barnett of due process, a fair trial, and reliable determinations of guilt and penalty.

> The trial court instructed the jury that:

> > To find that the special circumstances referred to in these instructions as murder in the commission of kidnapping, is true, it must be proved, one, that the murder was committed while the defendant was engaged in the commission of a kidnapping, in violation of section 207(a) of the Penal Code.
> > Two, that defendant intended to kill a human being.
> > Three, that the murder was committed in order to carry out or advance the commission of a crime of kidnapping or to facilitate the escape therefrom, or to avoid detection.

> RT 11797.

> There is no evidence to support element number three. If Mr. Barnett murdered Eggett, the most that can be inferred from the record is that he did so from anger or for revenge. In fact, the killing did not facilitate Eggett's kidnapping – it ended it. Neither did it facilitate any kidnapping of Cantwell, Hampton, or Billy Eggett.

> Petition for Writ of Habeas Corpus, Case No. S096831, filed in the Supreme Court of California, at 328-29.

The court does not agree with respondent that reference in the third amended petition to the Ninth Circuit's decision in Clark v. Brown renders the portion of claim 92 relating to the kidnapping special circumstance unexhausted. First, neither case represents a change in federal law as announced by the United States Supreme Court. See Picard v. Connor, 404 U.S.

270, 276 (1971); see also Blair v. California, 340 F.2d 741, 745 (9th Cir. 1965) ("The underlying

lesson of this case is that a state prisoner who believes that some decision of the United States

Supreme Court subsequent to the state court decision in his case requires that his conviction or

sentence be set aside should first pursue any state remedy which may be available to present that

contention before applying for a federal writ of habeas corpus").  To the contrary, People v. Clark

is a decision by the California Supreme Court retroactively applying a change in state law and

Clark v. Brown is a decision by the Ninth Circuit regarding that change in state law.

Second, contrary to petitioner's apparent argument in claim 92 that the new rule

announced by the California Supreme Court in People v. Clark should be applied retroactively

and extended to the kidnapping special circumstance, the Ninth Circuit concluded that retroactive

application of the new rule violates due process.[4]  Thus, any reference in claim 92 to the Ninth

Circuit's decision in Clark v. Brown (which is the basis for respondent's argument that the claim

is not exhausted) stands for nothing more than the proposition that the claim should be

considered in light of the state of California law as it existed prior to People v. Clark, which is

the way the claim was presented to the state court.  Petitioner's misapplication of Clark v. Brown

in claim 92 does not represent a recasting of the issue in a fundamentally different light.

The court concludes that the portion of claim 92 relating to the kidnapping special

circumstance is exhausted and that, pursuant to Clark v. Brown, it must be analyzed on the merits

in the context of California state law as it existed prior to People v. Clark.

**Claim 102**:   The prosecutor committed misconduct by tampering with juror Larry Field
               when he was a potential witness on the motion for new trial.

At issue here is the related claim of ineffective assistance of counsel.  Petitioner

asserts that this claim, ineffective assistance of both trial and appellate counsel, was also raised in

---

[4]     For purposes of this analysis, the court will assume that the California Supreme
Court's holding in People v. Clark would extend to the kidnapping special circumstance and not
be limited to the felony-murder special circumstance.

his informal reply.  Respondent again fails to contradict petitioner's assertion that he raised this issue in his informal reply brief.  Pursuant to the discussion above, the undersigned finds this claim is exhausted.

> **Claim 103**:   The court did not conduct an adequate inquiry into juror Field's misconduct and false statements, either during or after trial, Mr. Barnett's counsel was ineffective in failing to conduct or request such an inquiry, and the prosecutor suppressed evidence of juror bias, resulting in juror Field remaining on the jury despite his misconduct and bias.

At issue here is the claim regarding the suppression of evidence by the prosecution, specifically that the prosecution was aware that defense counsel Stapleton was Patrice Remington's cousin, creating a conflict of interest regarding her relationship with juror Field.  Respondent identifies this claim as on pages 651-52, 659-66, respectively.  The claim, in relevant part is:

> Perhaps counsel's nonfeasance was due to his relationship with Patrice Remington.  Unbeknownst to Mr. Barnett at trial, and unrevealed by the State until 2005, was that defense counsel Mark Stapleton was Patrice Remington's cousin. Ms. Remington revealed this to prosecutor Ramsey during their interview. Exh. 240 at 8:9-10. Defense counsel never disclosed to Mr. Barnett that Mr. Stapleton was a cousin of the woman who approached juror Larry Field about Mr. Barnett. Mr. Stapleton obviously felt divided loyalties between Mr. Barnett and his cousin that prevented him from doing anything that would adversely impact his cousin, such as asking the court to call her as a witness in the inquiry regarding Field's extraneous communications about the case. Mr. Stapleton advised Remington to "just not []say anything" about Mr. Barnett or their interview with her. Exh. 240 at 8:8-16. His interest was in helping Remington avoid trouble, not in getting to the bottom of Mr. Barnett's allegations regarding Remington and Field. Remington would never admit tampering with Field, knowing that she would get in trouble. She took her cousin's advice and did not say anything further.

> TAP at 651-52.

> Counsel cannot be faulted, however, for failing to know that which the prosecutor suppressed. All parties knew that Patrice Remington, who was incarcerated with Ann Baxmeyer during Mr. Barnett's trial, had spoken to Field about his jury service during the trial. . . .

> TAP at 659-60.

> What defense counsel and the trial judge did not know is that the prosecutor had interviewed Patrice Remington. The transcript of the

interview reveals information that Field did not reveal when he was
questioned in open court, and that the prosecutor did not reveal. In fact, the
prosecutor's questioning of Field specifically avoided the areas that the
prosecutor knew would demonstrate, if Field answered truthfully, that
Field had heard a rumor that Mr. Barnett had offered drugs to Patrice
Remington to influence Field to vote in Mr. Barnett's favor. Further, Field
believed that Mr. Barnett had made the same offer to Field's wife, Anne,
which caused Field to be quite upset.

TAP at 660.

        After interviewing Remington, the prosecutor knew that Juror
Field had heard a rumor, and seemed to believe, that Mr. Barnett had
offered drugs to Field's wife, Anne Baxmeyer. The prosecutor concealed
this information from the trial court and from the defense. Because the
prosecutor concealed this information, the trial court never asked Field if
he had heard that Mr. Barnett had offered drugs to his wife, and how that
information affected him. In fact, on the day Mr. Barnett was sentenced,
the prosecutor arranged to have Field present in court to answer questions.
The prosecutor suggested that he should inquire whether Field knew
Kenny Clumpus, and whether Field had contact with a stranger that in any
way attempted to sway his ultimate verdict as the trial went along. RT
12885.

TAP at 663.

        The State suppressed the tape of its interview with Patrice
Remington. Mr. Barnett obtained the tape in 2005 pursuant to the Penal
Code § 1054.9 proceedings. Until he obtained the tape, he had no reason to
suspect that Field believed Mr. Barnett had offered drugs to Anne. From
his own investigation, Mr. Barnett was able to plead that Field was biased
because he believed Mr. Barnett had offered drugs to Patrice Remington to
induce her to influence Field. Pro Se Petn., Claim 77, at 306 ¶ 1 (relying
on Declaration of Kenny Clumpus, ¶ 6, which appears in Appendix to Pro
Se Petn., Volume I, at 25); Pro Se Petn., Claim 257 at 944-49; Pro Se
Petn., Appendix, Vol. I, Declaration of Lee Max Barnett at 7 ¶ u. But Mr.
Barnett, his trial counsel, and his appeal/habeas counsel never knew that
Field also believed that Mr. Barnett had tried to bribe his wife, Anne
Baxmeyer. That information was suppressed by the State, and could not
have been discovered earlier by Mr. Barnett through the exercise of due
diligence. *Williams v. Taylor*, 529 U.S. 420 (2000) (where State actors
suppressed information giving rise to juror bias claim, petitioner did not
fail to develop the facts in state court).

TAP at 666.

        Petitioner states the factual basis for this allegation was not disclosed until the

§ 1054.9 proceedings, and that further exhaustion would be futile.  He claims the allegation the

respondent is objecting to is a minor sub-claim of the overall claim of juror bias, misconduct,

1  ineffective assistance of counsel, prosecutorial misconduct, and trial court error and it does not

2  fundamentally alter the nature of the claim.  He also claims the California Supreme Court has

3  rejected this claim on direct appeal, as well as in his habeas petitions, and there is no likelihood

4  that the state court would grant a hearing on his allegations regarding Mark Stapleton's familial

5  relationship with Patrice Remington.  In addition, petitioner argues that the allegations regarding

6  the interview between the prosecutor and Ms. Remington are additional facts in support of a

7  claim that was presented to the state court which do not fundamentally alter the claim.

8  Respondent again argues that futility does not exhaust this claim because it is

9  factually distinct from his previous claims.  Respondent alleges that the allegations regarding the

10  suppression of evidence by the prosecution is unexhausted.  Specifically, he argues that the

11  allegations regarding the defense counsel's familial relationship with Ms. Remington, who

12  petitioner alleges interfered with a juror, is unexhausted.  Petitioner alleges this minor part of this

13  claim does not fundamentally alter the claims presented in state court.

14  However, having a familial relationship with a person directly involved with the

15  claim of jury tampering is significant and adds strength to his claim of conflict of interest.  So, as

16  to petitioner's claim of ineffective assistance of counsel, based on a conflict of interest with

17  regards to his failure to disclose his familial relationship with Ms. Remington, the undersigned

18  finds this new factual allegation to be unexhausted.  However, to the extent this new factual

19  allegation supports petitioner's claim as to the court's inadequate inquiry as to juror bias, these

20  new factual allegations do not fundamentally alter the claim and therefore, the undersigned finds

21  it to be exhausted.

22   **Claim 104**:    Newly discovered evidence demonstrates Mr. Barnett's innocence; trial
23                    counsel unreasonably failed to discover evidence of innocence; the
                      prosecution wrongfully withheld evidence of innocence.

24  At issue here are the allegations based on Jeff Barker's proposed testimony, and

25  the allegations based on the new discovery of the taped jailhouse conversation between

26  Gabryelski and Barnett.  Respondent cites to page 669, footnote 206, of the third amended

1    petition.[5]

2            Petitioner argues that the allegations regarding Jeff Barker were included in his

3    informal reply brief to the second state petition.   Respondent again relies on his argument that the

4    informal reply brief was insufficient to exhaust the claim, and fails to dispute that petitioner

5    raised the issue in his brief.   Accordingly, the undersigned finds this claim to be exhausted.

6            The allegations regarding Jack Gabryelski are found in footnote 206 as follows:

7                    In the Penal Code § 1054.9 proceedings, the District Attorney for
             the first time disclosed a tape-recorded conversation between Mr. Barnett
8            and Jack Gabryelski at the jail. Exh. 244. The transcript of the tape reveals
             that Gabryelski told Mr. Barnett that "Mushroom Bill" had said that
9            Cantwell, not Mr. Barnett, was the killer. Exh. 244 at 7-8.

10           TAP at 669.

11           Petitioner acknowledges he has not presented this allegation to the state court,

12   because it was unknown until the § 1054.9 discovery.   He again argues further exhaustion of this

13   claim would be futile, because the California Supreme Court has already rejected petitioner's

14   claim of innocence based on other witness statements regarding Cantwell's confession to the

15   murder of Richard Eggett.   In addition, he argues this statement is identical to statements already

16   presented to the state court by other witnesses, and does not fundamentally alter the claims

17   already presented in state court.   Respondent argues that even if the futility doctrine is viable, it

18   should not be available to excuse exhaustion on this claim because claims of innocence based on

19   evidence from various witnesses are factually distinct.

20           A new statement from witness indicating additional support to petitioner's claim

21   of actual innocense adds new dimension to his claims, and thus has the potential to

22   fundamentally alter the claim.   Petitioner states that the new statement does not fundamentally

23   alter his claim in that the statement is the same as other witnesses gave.   However, he does point

24   the court to which claim he alleges was not fundamentally altered by this additional witness

25

26           [5]    The respondent cites page 660.   However, footnote 206 appears on page 669.

1  statement.  Accordingly, the court finds the portion of claim 104 based on the newly discovered

2  tape-recorded conversation between petitioner and Gabryelski, including the claim of ineffective

3  assistance of counsel, is unexhausted and, as it is factually based, futility does not excuse the

4  exhaustion requirement.

5         **Claim 111**:    The conditions which impair Mr. Barnett's ability to assist his counsel
6                         make it likely that he will be incompetent to be executed; the statutory
                          procedures for assessing competency to be executed do not conform to
7                         federal constitutional principles.

8         The California Supreme Court dismissed this claim as premature.  Respondent

9  appears to argue in his motion to dismiss that claim 111 is unexhausted because it was dismissed

10  by the state court as premature.  Petitioner argues that, although the claim may be premature, it is

11  not unexhausted because it was presented in his second state habeas petition as claim 113, and

12  respondent has acknowledged that it was in fact presented to the state court.  In his reply,

13  respondent states "[a]s the state court determined, the claim for incompetence to be executed is

14  premature.  When this claim is ripe, Petitioner is required to exhaust this claim in state court."

15  (See Reply, doc. 232, at 17).

16         The undersigned agrees with petitioner, and as respondent concedes, he did

17  present this claim to the state court which renders it exhausted.  However, it appears that

18  petitioner included this claim in his petition to preserve his right to raise it later pursuant to

19  Stewart v. Martinez-Villareal, 523 U.S. 637 (1998).  Nonetheless, the undersigned finds this

20  claim is premature because no execution date has been set. See Ford v. Wainwright, 477 U.S.

21  399 (1986).  The claim should be dismissed, without prejudice.

22         **Claim 114**:    The sentence being inflicted upon Mr. Barnett constitutes cruel, unusual,
                          inhuman, and degrading punishment or treatment; Mr. Barnett's due
23                         process rights were violated on appeal and state habeas corpus; he is being
                          punished twice for the same crime; the sentence being inflicted constitutes
24                         an unforeseeable expansion of the law in effect at the time of the crime; it
                          is unreliable because the sentencing determination was based on materially
25                         inaccurate information.

26         At issue here are the new claims that petitioner's due process rights were violated

on appeal and state habeas, that petitioner is being punished twice for the same crime, that petitioner's sentence is an unforeseeable expansion of the law, and that petitioner's sentencing was based on inaccurate information.  Petitioner states that this claim was included in his reply brief on direct appeal, his second state habeas petition, his pro se petition and his informal reply brief.  In fact, petitioner points out that the "California Supreme court discussed this claim in its opinion on direct appeal, acknowledging that it had been presented, albeit refusing to adjudicate it."  (See Opposition, doc. 227, at 56 (citing People v. Barnett, 17 Cal.4th 1044, 1182-83 (1998)).  Respondent argues that petitioner substantially expanded this claim in his informal reply brief, and claims raised in the reply brief are insufficient to meet the exhaustion requirements.

As discussed above, the undersigned finds those claims raised in the informal reply brief are exhausted.  As respondent does not argue that these claims are not found in the informal reply, regardless of whether they are found in petitioner's pro se petition, these allegations are exhausted.

> **Claim 117**:   The prosecutor committed misconduct in closing argument when he argued that witnesses who were incarcerated had a different standard for the truth; the prosecution suppressed favorable evidence related to Kenny Clumpus's credibility.

This entire claim is at issue here, in that respondent argues it is a new claim.  Petitioner argues that this claim relies on evidence contained in the transcript of a taped interview between the prosecutor, the investigator and a defense witness, which was not disclosed to the defense at the time of trial.  Petitioner states he did not receive the tape of the interview until the discovery proceedings pursuant to § 1054.9, and that the evidence gives rise to a prosecutorial misconduct claim based on a violation of Brady v. Maryland, 373 U.S. 83 (1963).  He argues that any requirement to exhaust this claim in the state court would be futile as the California Supreme Court has already denied numerous claims of suppression of favorable evidence and prosecutorial misconduct and there is no likelihood that he would be granted a hearing on the merits of this claim.  Respondent argues that the futility doctrine should not exempt this claim

1  from the exhaustion requirement because this claim is factually distinct from petitioner's

2  previous prosecutorial misconduct and suppression of the evidence claims, and they are not

3  questions of pure law.

4        Claims of prosecutorial misconduct are factually specific.  This claim is not a

5  question of pure law, and therefore the undersigned finds a futility argument is insufficient to

6  excuse exhaustion.  As petitioner essentially acknowledges this claim was not presented to the

7  state court in that it was only recently discovered, the undersigned finds this claim unexhausted.

8  **Claim 118**:    Defense counsel rendered ineffective assistance by failing to introduce
                 evidence of prosecutorial misconduct in the case which amounted to a

9                   fraud on the court, because as evidenced by the misconduct that defense
                 counsel knew about, and that which is now known, the prosecutor did

10                   perpetrate a fraud on the court.

11        This entire claim is at issue here, in that respondent argues it is a new claim.

12  Petitioner states this claim involves another claim of prosecutorial misconduct, an attempted

13  fraud upon the court, and ineffective assistance of counsel.  He alleges the factual basis for this

14  claim was disclosed pursuant to the § 1054.9 discovery proceedings.  He also argues that any

15  requirements that this claim be exhausted in state court is futile given the California Supreme

16  Court's previous denial of other similar claims.  Respondent again argues no applicability of the

17  futility doctrine as the claims are factually distinct, and do not involve questions of pure law.

18        As discussed above, futility does not excuse exhaustion of claims that are

19  factually distinct.  Petitioner acknowledges the facts alleged in this claim were not presented to

20  the state court, because it was only recently discovered.  Accordingly, the undersigned finds this

21  claim to be unexhausted.

22  **V.  CONCLUSION**

23        The court makes the following findings:

24  1.     The portions of claim 13 relating to Turowski and Hammons (see TAP,
         pp. 269-70, ¶¶ 997-1002), including the claims of ineffective assistance of

25           counsel relating to these witnesses (see TAP, pp. 170-71, ¶¶ 1003 and
         1005), are unexhausted;

26

2.   The portion of claim 54 regarding the anonymous letter (see TAP, p. 439, ¶ 1512), including the claim of ineffective assistance of counsel relating to the anonymous letter (see TAP p. 441, ¶ 1517), is unexhausted;

3.   The portion of claim 104 based on the newly discovered tape-recorded conversation between petitioner and Gabryelski (see TAP, p. 669, ¶ 2257, n.206), including the claim of ineffective assistance of counsel (see TAP, p. 672, ¶ 2265), is unexhausted;

4.   Claim 111 is premature; and

5.   Claims 117 and 118 are unexhausted.

Because the third amended petition contains both exhausted and unexhausted claims, it is a mixed petition. Petitioner should be provided the opportunity to accept dismissal of the entire action without prejudice to re-filing once all claims have been exhausted or file a fourth amended petition containing only exhausted claims. As an alternative to either option, petitioner may seek an order allowing him to litigate unexhausted claims in state court while this case is stayed and held in abeyance. In any event, claim 111 is premature and should be dismissed without prejudice to re-asserting it once it is ripe.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Based on these findings, the undersigned recommends that:

1.    Respondent's motion to dismiss (Doc. 222) be granted in part and denied in part;

2.    Claim 111 be dismissed as premature; and

3.    This case be referred back to the undersigned for further proceedings.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 16, 2008

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

28